UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KIMKELLY McCLEARY,                    )    No. 04-CV-5120-AAM
                                      )
            Plaintiff,                )    ORDER DENYING PLAINTIFF'S
                                      )    MOTION FOR SUMMARY JUDGMENT
v.                                    )    AND GRANTING DEFENDANT'S
                                      )    MOTION FOR SUMMARY JUDGMENT
JO ANNE B. BARNHART,                  )
Commissioner of Social                )
Security,                             )
                                      )
            Defendants.               )

BEFORE THE COURT are cross motions for Summary Judgment. (Ct. Rec. 9, 17). Attorney Lora Lee Stover represents the Plaintiff; Assistant United States Attorney Pamela Derusha and Special Assistant United States Attorney Thomas M. Elsberry represent the Defendant. After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

## I.    JURISDICTION

Kimkelly McCleary (Plaintiff) protectively filed for Supplemental Security Income on March 8, 2000. (Tr. 82-84.) She alleged disability due to thoracic disk, cervical disk, and left shoulder injuries, with an onset date of August 17, 1993. (Tr. 140.) Her application was denied initially and upon reconsideration. (Tr. 63-64.) She timely requested a hearing

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 1

before an administrative law judge (ALJ), the first of which was held on April 1, 2002. (Tr. 73, 770.) Supplemental hearings were held on January 6, 2003, and March 6, 2003. (Tr. 742, 720.) ALJ John Madden, Jr. denied her application, and the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 9-12.) The instant matter is before the district court pursuant to 42 U.S.C. § 405(g).

## II. SEQUENTIAL EVALUATION

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner is governed by a five-step sequential evaluation process for determining whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520, 416.920. In steps one through four, a claimant must demonstrate a severe impairment and an inability to perform past work. *Erickson v. Shalala,* 9 F.3d 813, 816-17 (1993). If a claimant meets those requirements, the burden shifts to the Commissioner to demonstrate a claimant can engage in other types of substantial gainful work which exist in the national economy. *Id.* at 817 (*citing Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984)). To make this determination, the Commissioner must consider a claimant's age, education and work experience. 20 C.F.R. § 404.1520(f). *See Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287 (1987).

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

### III.    STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

### IV.    STATEMENT OF THE CASE

Detailed facts of the case are set forth in the transcript of proceedings and the ALJ's decision and are briefly summarized as follows.  Plaintiff was 40 years old at the time of the ALJ hearing.  (Tr. 778.)  She dropped out of high school, completed her high school equivalency, and attended some college courses, with no degree earned.   (Tr. 778.)  She has worked as a shipping and receiving clerk, a supermarket checker, a personal aide, and a wood machinist.  (Tr. 141, 731-32.)  Plaintiff was divorced at the time of the hearing.  She has no children.  (Tr. 452, 532.)  She testified she cannot walk without an assistive device; she was

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 3

using a walker at the time of the hearing. (Tr. 755.) She
testified that her mother comes to her apartment almost daily to
help her with her activities of daily living because she was too
tired and in too much pain to do household chores. (Tr. 753, 791-
92.) She also stated she was attending counseling group at the
Veterans Administration (VA) medical center for post traumatic
stress disorder. (Tr. 760.)

**V.   ADMINISTRATIVE DECISION**

ALJ Madden applied the five-step sequential evaluation
process for determining whether Plaintiff is disabled.  At step
one, he found she had not engaged in substantial gainful activity
since her alleged onset date; at step two he found she had no
medically determinable mental impairments and had severe physical
impairments of cervical, thoracic, lumbar and left shoulder
strains (status post August 1993 industrial injury), with minimal
degenerative changes of the lumbar spine. (Tr. 40, 38.)  At step
three, he found the physical impairments did not meet or equal the
requirements of a listed impairment. (Tr. 40.)  The ALJ found
Plaintiff's allegations regarding her limitations were not totally
credible. (Id.)  At step four, he determined Plaintiff retained
the ability to perform a full range of light level work, which
included sedentary work, and was able to perform her past relevant
work as a checker. (Tr. 38-39, 40.)  Alternatively, the ALJ
proceeded to step five and posited a more restrictive hypothetical
to vocational expert Franklin N. Corbin. (Tr. 39, 734.)  The ALJ
referred to the findings of Kenneth Sullivan, M.D. (neurologist)
as a basis for the hypothetical he presented at the hearing: no
lifting/carrying restrictions and no sitting/pushing, pulling

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 4

restrictions; standing and walking were limited to two hours in an eight-hour day; there could be no climbing, balancing, kneeling, crouching, crawling or stooping; and repetitious overhead or over-shoulder level work should be avoided. (Tr. 28, 39, 586-92,734-35.) Mr. Corbin opined such an individual could perform several sedentary to light jobs in the national economy. (Tr. 735.) The ALJ concluded Plaintiff had not been "disabled," as defined in the Social Security Act, at any time through the date of his decision.

## VI. ISSUES

The question presented is whether the ALJ's decision is supported by substantial evidence and is free of legal error. Plaintiff contends that the ALJ erred when he: (1) improperly assessed alleged mental impairments at step 2; (2) disregarded her primary care providers' opinions; (3) improperly assessed her credibility and pain complaints; (4) improperly assessed her residual functional capacity (RFC); and (5) presented an incomplete hypothetical to the vocational expert. (Ct. Rec. 11, p. 9).

## VII. DISCUSSION

A.    Step Two Evaluation - Severe Mental Impairment

Plaintiff first contends the ALJ erred at step two when he found no mental impairments. To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.  20 C.F.R. § 416.929.  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  However, an overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of "disabled."  *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994).  Thus, the Commissioner has passed regulations which guide dismissal of claims at step two.  Those regulations state an impairment may be found to be not severe *only* when evidence establishes a "slight abnormality" on an individual's ability to work.  *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*citing Social Security Ruling* (*SSR*) *85-28*).  The ALJ must consider the combined effect of all of the claimant's impairments on the ability to function, without regard to whether each alone was sufficiently severe.  *See* 42 U.S.C. § 423(d)(2)(B)(Supp. III 1991).  An impairment or combination of impairments is not severe if it does not significantly limit a person's ability to do basic work activities, such as physical functions, capacities for seeing, hearing and speaking; understanding, carrying out and remembering simple instructions, use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521.  The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims.  *Bowen*, 482 U.S. at 153-154.

Here, the ALJ found Plaintiff's medically determinable mental

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

impairments, if any, resulted in "mild" or no limitations in her functioning. (Tr. 34.) He found she had presented no medical evidence of post traumatic stress disorder (PTSD). (Id.) He reasoned that since military records from 1979, submitted by Plaintiff, had no mention of her alleged rape or broken leg, her inconsistent reports to medical providers regarding details of the alleged rape were fabricated to support a diagnosis of PTSD. Accordingly, he found no medically determinable PTSD. (Tr. 32.)

Regarding references to depression and a "questionable diagnosis of bipolar disorder," the ALJ found Plaintiff's lack of credibility combined with inconsistent reports from mental health providers, did not support a determination of "severe" mental impairment, as defined by the Regulations. (Tr. 35.) Having presented no medical evidence to establish more than mild restrictions caused by any mental condition, Plaintiff failed to meet her burden at step two. (Tr. 40.) As discussed below, the ALJ's thorough evaluation of the medical evidence and credibility findings are based on substantial evidence to support his step two determination.

1. Medical Opinions

Plaintiff argues that the ALJ erred at step two when he improperly ignored the opinions of examining psychologist Michael O'Connell, Ph.D., that she had moderate and marked functional limitations due to mental impairments. (Ct. Rec. 11, p. 13; see Tr. 543-48.) To determine if there is a medically determinable impairment, the ALJ must consider the opinions of acceptable medical sources, as defined by the Regulations. Among acceptable medical sources are licensed physicians and psychologists. 20

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

C.F.R. § 404.1513.  A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (*quoting Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Smolen v. Chater,* 80 F.3d 1273, 1285-88 (9th Cir. 1996); *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989).  If a treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons.  *Lester,* 81 F.3d at 830. If contradicted, the ALJ may reject the opinions with specific, legitimate reasons that are supported by substantial evidence. *See Flaten*, 44 F.3d at 1463; *Fair*, 885 F.2d at 605.  To meet this burden, the ALJ can set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his or her interpretation of the evidence, and make findings.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  Historically, courts have recognized internal inconsistencies, conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints as specific, legitimate reasons for disregarding a treating or examining physician's opinion.  *Thomas,* 278 F. 3d at 957; *see also Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 605. Further, the more consistent an opinion is with the record as a whole, the more weight is given to that opinion.  20 C.F.R. §

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 8

404.1527(d)(4). The ALJ does not need to accept the opinion of any medical source if it is conclusory, brief or unsupported by findings. *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Although deference is given to a treating physician's opinion, the determination of whether an impairment meets or equals a listing and the ultimate determination of disability are findings reserved solely for the Commissioner. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *SSR 96-5p*. If the record supports more than one rational interpretation, the reviewing court will defer to the ALJ's decision. *Bayless v. Barnhart*, 427 F.3d 1211, 1214 (2005).

Dr. O'Connell examined Plaintiff in December 2001, at the request of Oregon Disability Services. His examination included a mental status examination, a clinical interview and social history, and a battery of objective psychological tests. (Tr. 530.) He diagnosed Plaintiff with a pain disorder (associated with psychological factors and a general medical condition), dysthymia, alcohol dependence reported in partial remission, and Personality Disorder, NOS, with borderline and passive-aggressive features. Her global assessment of function at the time of testing was assessed at 65.[1] (Tr. 543.) Dr. O'Connell did not conclude Plaintiff was incapable of working due to mental problems, and remarked that although Plaintiff described herself

---

[1] A score of 61-70 indicates "some mild symptoms, (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION* (*DSM-IV*), at 32.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 9

as having short-term memory difficulties, her capacities in that area were actually in the superior range.  He noted, however, she should probably avoid work in which sustained attention was required due to her apparent difficulties with concentration. (Tr. 543.)  In addition to his narrative, Dr. O'Connell completed two checklist forms indicating moderate and marked limitations in the areas of understanding and memory, social interaction, and adaptation.  (Tr. 545-46.)

In his decision, the ALJ discussed Dr. O'Connell's report, noting that the findings on the checklist forms were conclusory and inconsistent with Dr. O'Connell's observations and narrative conclusions.  (Tr. 33.)  The ALJ specified the inconsistencies and concluded the functional limitations at issue were not supported by Dr. O'Connell's "detailed and probative" report.  (Tr. 33, 35.) The record supports the ALJ's reasoning.  Dr. O'Connell stated in his narrative that Plaintiff's motivation and cooperation were marginal and she was a "an extremely vague historian."  (Tr. 33, 533.)  Her personality testing did not produce a valid profile, and, combined with her Fake Bad Scale results, precluded interpretation of the clinical scales.  (Tr. 542.)  Other testing revealed some tendency toward exaggeration of problems. Plaintiff's test results suggested moderate levels of anxiety and depression and a tendency towards exaggerated somatic complaints of a physical nature.  (Id.)  The ALJ noted that Dr. O'Connell's assessed restrictions in daily living were based on physical limitations, not mental impairments.  (Tr. 33.)  Finally, the ALJ found Plaintiff's lack of credibility made her subjective complaints to Dr. O'Connell unreliable.  (Tr. 34, 35-36.)  These

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 10

are legitimate reasons for discounting Dr. O'Connell's opinions. *See Bayless*, 427 F.3d at 1218.

Plaintiff also contends the ALJ improperly ignored opinions of her VA mental health providers that mental disorders precluded her from working. (Ct. Rec. 11, p. 13). The record shows that Plaintiff received ongoing counseling at the VA for PTSD. The PTSD diagnosis was based apparently on Plaintiff's claim that she was raped while in the military, that her assailant broke her leg, and she was discharged as a result of this incident. [2] (Tr. 501, 593.) As mentioned above, Plaintiff's military records contained no mention of sexual assault, rape or a broken leg. (Tr. 229-54.) Based on these records, and Plaintiff's inconsistent testimony and self-report to medical providers, the ALJ found the alleged rape and purported PTSD diagnosis were unsupported by competent medical evidence. (Tr. 31, 32.)

The ALJ found the opinions from the VA counselors who endorsed disability due to mental problems had no probative value because the counselors were not acceptable medical sources,[3] their

---

[2] The court notes that Plaintiff was not diagnosed with PTSD by Dr. O'Connell in 2001, or Dr. Mee in 1999. (Tr. 380, 543.)

[3] Other sources, such as Plaintiff's VA therapists and nurse practitioner may provide evidence of the effects of an impairment on a claimant's ability to work. 20 C.F.R. §§ 1513(d)(1), 404.1529(c)(3). However, they are not acceptable medical sources to diagnose an impairment. 20 C.F.R. § 404.1513(a). Although the Regulations do not provide specific guidelines for weighing the opinions of "other sources," generally, greater weight is given to an acceptable medical source, but "other source" opinions may not be disregarded without the ALJ giving reasons that are germane to that witness. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *see also Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993).

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 11

opinions were based on Plaintiff's fabricated rape, and their
opinions were not consistent with other medical evidence in the
record or their own counseling notes.  (Tr. 37.)  He also found
the counselors did not articulate "specific work related
restrictions" due to mental impairments.  (Id.)  These are
legitimate, germane reasons for discounting the VA counselors'
opinions.

Plaintiff asserts that the ALJ erred by not taking medical
expert testimony.  She does not cite any authority for this
proposition.  (Ct. Rec. 11, p. 13.)  Medical expert testimony is
not required where the record is fully developed and such
testimony would not assist the adjudicator.  The resolution of
conflicting medical evidence is solely the responsibility of the
ALJ.  *See Andrews,* 53 F.3d at 1041, *citing Magallanes*, 881 F.2nd
at 753; *see also SSR 83-20* (ALJ should call medical expert where
disability onset date is uncertain from the medical evidence
presented and must be inferred).  Here, the medical record was
fully developed, and as discussed above, the ALJ properly
evaluated the opinions of Plaintiff's mental health providers at
step two.

2.   Pain Testimony and Credibility

Plaintiff contends the ALJ's credibility findings were
inadequate, and therefore an improper basis for rejecting her
medical providers' opinions.  This argument is without merit, as
the ALJ devoted several pages of his 22 page decision to a
discussion of Plaintiff's inconsistencies, exaggerations in self-
reports to medical providers, and evidence of Plaintiff's
motivation for secondary gain.  (Tr. 24-25, 27-29, 31-36.)

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 12

An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A). This holds true even where the claimant introduces medical evidence showing that she has an ailment reasonably expected to produce <u>some</u> pain; many medical conditions produce pain not severe enough to preclude gainful employment. *Fair*, 885 F.2d at 603(emphasis in the original).  Nonetheless, an adjudicator "may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell*, 947 F.2d at 345-46; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  Thus, where a case turns on the reliability of a claimant's allegations of pain, credibility findings are critical.  If there is no affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of symptoms. *Reddick*, 157 F.3d at 722.

The ALJ may consider the following factors when weighing the claimant's credibility: her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and conduct, her daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan*, 169 F.3d at 600.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 13

Here, in discounting Plaintiff's subjective complaints, the ALJ cited Plaintiff's inconsistent statements to medical providers regarding: the reason for her discharge from the Army; about her tenure and assignment while in the military; about an alleged rape by someone in the military (reports varied from being raped by three men while her father was in the military, to being kissed without consent by her sergeant while she was in basic training, to being raped by a stranger or by her Drill Sergeant; in her reports of receiving a broken leg during the alleged rape; in her reports of substance abuse and treatment, attempted suicides, and sexual misconduct by her brother-in-law. (Tr. 31-32; *see* Tr. 401-02, 498-99, 215.)   The ALJ also stated that medical providers noted a lack of medical evidence to explain her symptoms, and some suggested exaggeration or a "functional" basis for her complaints. (Tr. 27-32; *see also* Tr. 563, 588.)   As discussed below, the ALJ's reasoning and conclusions are amply supported by the record.

Military records produced by Plaintiff indicate no report of sexual assault or broken leg during the three months she attended basic training.   (Tr. 231-34, 237.)   Nonetheless, Plaintiff represented to various medical providers that she was raped in the military and discharged due to that incident.   (Tr. 215, 331, 501.)   In contrast, the military records show that she was counseled for poor performance and attitude almost immediately upon her arrival at Basic Training and was discharged due to unsuitability, apathy, violation of rules, and immaturity.   (Tr. 232.)   Contrary to Plaintiff's allegations, the base hospital records indicate she was referred to Podiatry for cast removal not from a broken leg, but from a sprained heel.   (Tr. 243-44.)   The

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 14

ALJ's finding that there was no documented basis for Plaintiff's allegation of rape and broken leg is supported by substantial evidence.  His determination that her report of sexual trauma was fabricated as a basis for a PTSD diagnosis is rational in light of the evidence.

In 2001, Plaintiff reported she was raped by her brother-in-law in direct contradiction to statements made to her VA mental health counselor in 1999, that the brother-in-law had exposed himself to Plaintiff.  (Tr. 31, 418, 498.)  In 1998, she reported to Dr. Lantsberger that she had finished her psychology degree, but testified in 2003, that she had only attended 2 years of college and had no degree. (Tr. 356, 778.)  At varying times, she reported a history of ten suicide attempts, but denied any suicide attempt at other times.  (Tr. 531, 584, 594, 598.)

The ALJ also cited lack of corroborating objective medical findings in his credibility analysis.  (Tr. 35.)  Shortly after Plaintiff's injury, imaging reports indicated no fractures, dislocations or acute bony injury, herniated discs or spinal stenosis.  (Tr. 519-20, 525.)  In February 2002, in response to Plaintiff's complaints, treating physician Eric Webb, M.D., ordered imaging reports of Plaintiff's shoulder, lumbar spine, pelvis, and left hip. (Tr. 576-78.)  The test results showed no abnormalities consistent with the symptoms alleged.  (Id.)  Dr. Webb reported in March 2002, that Plaintiff was in no acute distress, that she exhibited a somewhat "odd" affect and that her pain disorder may be "functional." (Tr. 563.)  Also in February 2002, nurse practitioner Marguerite Smith, M.S., of Pacific Spine and Pain Centered ordered a brain scan, which showed no

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 15

significant abnormalities. (Tr. 558.) In 2002, in response to Plaintiff's complaints of gait problems and possible multiple sclerosis, Drs. Sullivan and Maukonen, neurologists, conducted objective tests, including a brain scan, and found nothing to explain Plaintiff's alleged symptoms. (Tr. 588, 693-97, 702-04.) Dr. Sullivan also noted that Plaintiff's symptoms may be "functional." (Tr. 588.) The ALJ's clear and convincing credibility findings are based on substantial evidence in the record.

B.  Residual Functional Capacity (RFC) and Hypothetical Question

Plaintiff next contends that the ALJ erred in his RFC assessment and subsequent hypothetical to the vocational expert at step five. The RFC is an assessment, based on the entire record, of what work capabilities the Plaintiff retains, taking into consideration exertional and non-exertional limitations supported by medical evidence in the record. The RFC findings are reserved to the Commissioner, and although the statements and opinions of medical providers are considered, the ultimate responsibility for determining the RFC is that of the ALJ. *SSR 96-5p.* At step five, the ALJ's RFC assessment is presented to a vocational expert in the form of a hypothetical question. The vocational expert then opines as to whether there are jobs in the national economy that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). The hypothetical question posed to the vocational expert must set forth all the claimant's limitations and restrictions. *Magallanes,* 881 F.2d at 756 (citing *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1988)).

Here, the ALJ based the RFC on limitations set forth in Dr.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 16

Sullivan's Medical Source Statement, dated August 1, 2002. (Tr. 39, 589-92.) The ALJ described an individual who had no lifting restrictions as to weight, standing and walking limited to two hours out of a six hour day, no climbing, balancing, kneeling, crouching, crawling or stooping due to gait problems, and avoidance of repetitious or overhead or above the shoulder level work. (Tr. 734-35.) Plaintiff argues the ALJ's RFC was incomplete and ignored the mental restrictions opined by Dr. O'Connell and physical restrictions noted by VA treating physician John Pennock, M.D. (Ct. Rec. 11, p. 12).

As discussed above, the ALJ gave specific and legitimate reasons for discounting Dr. O'Connell's opinions and finding, at most, "mild" restrictions due to the alleged mental conditions. (Tr. 33-35.) Therefore, the ALJ did not err in excluding mental restrictions. Regarding physical restrictions, in 1999, Dr. Pennock completed a physical evaluation form indicating that Plaintiff suffered cervical disk disease, decreased function in her left fourth and fifth finger, and depression, which caused moderate impairments. (Tr. 368.) He opined she was capable of sedentary work, and her impairment would persist for nine months. (Tr. 369.) In July and October 2000, Dr. Pennock completed additional physical evaluation forms, opining Plaintiff suffered a fractured coccyx, low back strain and neck pain, causing moderate and marked impairments which severely limited her ability to work. (Tr. 527, 529.) The ALJ adequately summarized Dr. Pennock's findings, and rejected them in favor of the opinions of Drs. Sullivan and Price. (Tr. 37.) He reasoned that Dr. Pennock's severity findings were contradictory to the more complete

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 17

examinations and test results of Dr. Price and Dr. Sullivan.  He found that Dr. Pennock did not describe his examinations or provide rationale for his conclusions, which appeared to be based on Plaintiff's subjective self-reports.  (Id.)  Most importantly, the ALJ properly found Dr. Pennock indicated Plaintiff's restrictions would last less than the 12 month durational period.  (Tr. 37, 527.)  These are appropriate reasons for discounting Dr. Pennock's conclusions and are well-supported by the record.  (Tr. 526-29.)  Further, as noted by the ALJ, Dr. Price's extensive physical examination took place at approximately the same time as Dr. Pennock's October form report.  (Tr. 453-60.)  Dr. Price found Plaintiff capable of performing light to sedentary work, with no postural difficulty in stooping, bending or kneeling.  He noted Plaintiff did not need assistive devices other than a cushion for her coccyx, she had adapted to using her right hand in her activities of daily living, but could use both hands in some tasks. (Tr. 459.)

The ALJ's reliance on the opinions of Drs. Sullivan and Price over the more conclusory opinions of Dr. Pennock is not misplaced.  Furthermore, the ALJ is under no obligation to adopt the restrictions propounded by Plaintiff's counsel.  *Magallanes,* 881 F.2d at 757.  The ALJ did not err in his determination of the RFC, his presentation of the hypothetical question or in his reliance on Mr. Corbin's testimony.

## VIII.  CONCLUSION

The ALJ did not err in his evaluation of Plaintiff's medical records.  His extensive credibility findings and residual functional capacity determination are supported by substantial

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 18

1  evidence in the entire record.  Having proceeded to step five of

2  the sequential evaluation, the ALJ's hypothetical question was

3  proper, and he did not err in finding Plaintiff not "disabled" as

4  defined by the Social Security Act.  Accordingly,

5

6  **IT IS ORDERED:**

7      1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 9** ) is

8  **DENIED.**

9      2. Defendant's Motion for Summary Judgment (**Ct. Rec. 17**) is

10 **GRANTED.**

11     3. Judgment for the **DEFENDANT** shall be entered. The District

12 Court Executive is directed to enter this Order, forward copies to

13 counsel, and **CLOSE** this file.

14     **DATED** this  27th day of December 2005.

15

16              s/ Alan A. McDonald
                ALAN A. McDONALD
17         SENIOR UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 19